IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WYMAN FRALEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:05cv0006-VPM |
| | ) [WO] |
| CINCINNATI INSURANCE CO., | ) |
| a corporation, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Pending before the court is the defendant's ["Cincinnati"] motion for summary judgment of all claims asserted by the plaintiffs [collectively, "Fraleys"], which include state law claims for breach of contract, bad faith, unjust enrichment and conversion (Docs. ## 1, 45-47). This matter has been properly removed from the Circuit Court of Henry County, Alabama, pursuant to 28 U.S.C. §§ 1441, 1446 (2000), and this court enjoys subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Therefore, having reviewed Cincinnati's motion, the evidence Cincinnati submitted in support thereof, and the relevant law, the court concludes that the motion is due to be granted in part and denied in part.[1]

I.  **SUMMARY JUDGMENT STANDARD**

Summary judgment can be entered on a claim only if it is shown "that there is no

---

[1] By order dated 17 August 2006, the court struck the Fraleys' response in opposition to Cincinnati's motion and denied Cincinnati's request for leave to file a reply to the Fraleys' response. (Doc. # 61).

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Green v. Pittsburgh Plate & Glass Co**., 224 F. Supp. 2d 1348, 1352 (N.D. Ala. 2002) (citing **Anderson v. Liberty Lobby, Inc**., 477 U.S. 242, 248 (1986)). "A judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 259. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Because the court has stricken the Fraleys' response to the motion as untimely, it is extremely important for the parties to understand the movant's burden on summary judgment. Failure to respond to a motion for summary judgment is not dispositive, and, notwithstanding the nonmovant's failure, the moving party must nevertheless demonstrate that summary judgment is "appropriate." Fed. R. Civ. P. 56(e).

Thus, the movant must first demonstrate the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See* **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 157 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes *the material it lodged* must be viewed in the light most favorable to the opposing party." (emphasis added));

*see also*, *e.g.*, ***Information Syss. & Networks Corp. v. City of Atlanta***, 281 F.3d 1220, 1224 (11th Cir. 2002) ("The moving party bears the burden of proving that no genuine issue of material fact exists."); ***United States v. One (1) 1944 Steel Hull Freighter Converted Wartime Landing Craft Utility Vessel (LCU) Shamrock***, 697 F.2d 1030, 1031-32 (11th Cir. 1983) ("[W]hether or not the non-moving party has the burden of proof at trial, in a summary judgment action the moving party has the burden of showing that there is no genuine issue of material fact."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, ***Federal Practice and Procedure*** § 2727 (3d ed. 1998) [herein "Federal Practice"] (describing this principle as one with "which all courts would agree") *cited in* ***One (1) 1944 Steel Hull Freighter***, 697 F.2d at 1032.

The burden shifts to the non-movant "[o]nly after the moving party has satisfied that burden." ***Mullins v. Crowell***, 228 F.3d 1305, 1313 (11th Cir. 2000).

## II.   DISCUSSION

### A.   *The Fraleys' Claims*

The Fraleys allege in their complaint that on or around 29 August 2003, after a two-week trip, they returned to their home in Dothan, Alabama, to find "a cracked pipe under their kitchen sink with fresh water spewing from the break" (Doc. # 1, p. 9). This leak, the Fraleys contend, resulted in extensive water and mold damage for which they were insured pursuant to an active homeowners policy, No. HR 8243109, issued by Cincinnati. *Id.* at 8-9.

The Fraleys have failed to introduce evidence supporting their allegations in the complaint, therefore it is not necessary for the court to discuss them in great detail. It is sufficient to note that the Fraleys contend that Cincinnati has failed to pay on their claims of damage to their dwelling, damage to their personal property and loss of use of the property due to the alleged leak (Doc. # 1, pp. 11-14).

Moreover, the Fraleys contend that Cincinnati's failure to pay their claims constitutes bad faith, and Cincinnati's receipt and use of premiums paid constitute unjust enrichment and conversion (Doc. # 1, pp. 23-25).

### B.     *Cincinnati's Case for Summary Judgment*

#### 1.     **Breach of Contract**

Cincinnati's brief itself establishes the existence of factual disputes regarding the damage to the Fraleys' home, the cause thereof and Cincinnati's obligation to pay under the policy. Cincinnati does not dispute the existence of damage to the Fraleys' home and in fact submitted a report from a mold inspector Cincinnati retained that concluded "portions" of the Fraleys' ceilings in their living room and kitchen needed to be replaced, as well as the "living room carpet; door trim, baseboard, wallboard and insulation near the kitchen patio doors; and the wallboard, carpet, and baseboard from the basement" (Doc. # 46, p. 5).

Instead, Cincinnati contends that it is not obligated to pay on the Fraleys' claims because the damage found by the mold inspector differed to some extent from the damage originally claimed by the Fraleys *and* the Fraleys and the mold inspector disagreed as to the

cause of the alleged damage. Yet, Cincinnati fails to explain adequately how a difference of opinion as to the precise damage or cause of the damage relieved Cincinnati of its alleged obligations under the policy.

It stands to reason that Cincinnati would be required to pay for damage caused by events covered by the policy, and Cincinnati fails to demonstrate that the cause attributed by its mold inspector was not covered by the policy. On the contrary, by its own admission, based on the mold inspector's report and notwithstanding the mold inspector's conclusion that the damage likely was caused by something other than the leaking pipe alleged by the Fraleys, "Cincinnati paid the Fraleys Two Thousand Five Hundred and No/100s ($2,500.00) Dollars *pursuant to the Policy* [sic]. . . . In addition, Cincinnati *later paid* the Fraleys Three Hundred and NO/100s ($300.00) Dollars" (Doc. # 46, p. 5) (emphasis added).

It is unlikely that Cincinnati's payments were motivated by charity. Even if they were, an inference nevertheless arises that Cincinnati was knowingly liable under the policy. Although it may not have known the extent of its liability, the extent of the damage noted by the mold inspector belies any suggestion that its exposure to liability was limited to $2,800, particularly when, as Cincinnati appears to concede, the policy required payment for loss of use of the property (Doc. # 46, p. 5; Def's Ex. B, Doc. # 47-4, p. 3).

Consequently, Cincinnati's current contention that because the "residence did not suffer any damage as a result of the water leak from the kitchen sink pipe . . . Cincinnati was not obligated to remit payment to the Fraleys pursuant to the Policy" (Doc. # 46, p. 8) appears disingenuous, to say the least. Furthermore, its contention, tantamount to an

admission, that "Cincinnati's failure to remit payment to the Fraleys does not constitute a breach of contract in this case" (Doc. # 46, p. 8) may be incorrect depending on the evidence presented at trial.[2]

### 2.  Bad Faith

As Cincinnati notes, for the court to determine whether Cincinnati is entitled to judgment as a matter of law on the Fraleys' claims alleging bad faith, the court must be able to evaluate the insurer's decision to deny the claim in the context in which the decision was made, *i.e.*, in light of the information known to the insurer at the time the claim was denied. ***State Farm Fire & Casualty Co. v. Balmer***, 672 F. Supp. 1395, 1402 (M.D. Ala. 1987). Cincinnati also correctly notes that the existence of an arguable or debatable reason to deny the claim will defeat the Fraleys' claims of bad faith. *See **Balmer***, 672 F. Supp. at 1399-1401 (reviewing the relevant Alabama law).

Although Cincinnati rests on its contention that such a reason existed (Doc. # 46, pp. 8-11), based on the record before the court and for reasons that should already be clear, the court is not convinced that Cincinnati enjoyed even an arguable or debatable reason for admittedly failing to "remit payment to the Fraleys" for damage that Cincinnati's own

---

[2] Cincinnati's argument consolidates the Fraleys' three separate breach of contract claims except to note that their claim for damages resulting from loss of use suffers because they did not rent an apartment. Cincinnati does not contend that the Fraleys' policy required them to rent an apartment and nothing on the face of the policy excerpts Cincinnati filed with the court, which conveniently lack many significant sections of the policy, would suggest that an apartment rental was required (Def's Ex. B, Doc. # 47-4). Moreover, Cincinnati submitted evidence that the Fraleys did incur motel expenses (Def's Ex. A, Doc. # 47-3, p. 26).

inspector reported (Doc. # 46, p. 8). *See* **Balmer**, 672 F. Supp. at 1400. Cincinnati's actions are particularly questionable when considered with its admission that it actually paid the Fraleys $2,800 pursuant to the policy following the mold inspection report. Moreover, the court has no information before it that would allow it to determine the precise timing of Cincinnati's decision to decline further payment to the Fraleys.

The court's preliminary view of the evidence in this opinion should not be equated to judicial analysis of (1) the evidence, or (2) Cincinnati's entitlement to judgment as a matter of law, after presentation of the evidence to the trier of fact. Rather, the scope of this opinion is limited to the determination that the court cannot conclude, based on the record before it, that Cincinnati is entitled to judgment on the Fraleys' claims of bad faith at this stage of the litigation.

### 3. Unjust Enrichment

> The essence of the theor[y] of unjust enrichment . . . is that a plaintiff can prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to the plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud.

**Hancock-Hazlett Gen. Const. Co., Inc. v. Trane Co.**, 499 So. 2d 1385, 1387 (Ala. 1986) (emphasis in original).

The Fraleys' claim for unjust enrichment centers on Cincinnati's receipt and use of the premiums paid pursuant to the insurance policies and seeks a return of those premiums along with punitive damages (Doc. # 1, p. 23-24). As Cincinnati correctly notes, however,

nothing in the record before the court suggests that the premiums now belong to the Fraleys or were improperly paid or were paid as the result of fraud or mistake. More critically, nothing in the record belies Cincinnati's coverage of the Fraleys during the periods for which premiums were paid  -  the *quid pro quo* of the insurance contract.

Although questions may persist regarding Cincinnati's indebtedness to the Fraleys pursuant to the insurance policy, these questions are related to the insurance proceeds referenced in the policy  -  not to the premiums paid by the Fraleys. Therefore, viewing the facts in the light most favorable to the Fraleys and finding no material factual dispute, the court concludes that Cincinnati is entitled to judgment as a matter of law on the unjust enrichment claim. *See* **Trane Co.**, 499 So. 2d 1385, 1388 (Ala. 1986) (concluding that the plaintiff had no claim for unjust enrichment against a defendant who had retained only the money owed by the plaintiff); *see also* **Stone v. Mellon Mortg. Co.**, 771 So. 2d 451, 456 (Ala. 2000) ("Claims based on theories of . . . unjust enrichment . . . are precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover.").

### 4. Conversion

Similarly, Cincinnati has directed the court to authority that requires entry of judgment in Cincinnati's favor on the Fraleys' claim for conversion. **Willingham v. United Ins. Co. of Am.**, 628 So. 2d 328 (Ala. 1993).

"To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful

detention or interference with another's property." *Newson v. Protective Indus. Ins. Co. of Ala.*, 8909 So. 2d 81, 88 (Ala. 2003) (internal quotations omitted). "It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or to deliver it." *Id.* (internal quotations omitted). "Generally, an action for conversion of money will not lie unless the money is specific and capable of identification." *Id.*

As alleged, the Fraleys' conversion claim does no more than duplicate their breach of contract claims. Essentially, the Fraleys claim to have paid premiums with the understanding that "if a casualty not excluded by [their] policy caused damage to their home and personal property as well as loss of use of Plaintiffs' home, Plaintiffs' [sic] would be reimbursed by Cincinnati." (Doc. # 1, p. 24). They do not, however, allege entitlement to a return of the specific moneys paid, and the record does not establish an inference that the premiums paid are or were "specific and capable of identification."

In *Willingham*, the Alabama Supreme Court held that where "the only evidence is that . . . premiums were paid by [the insureds] to [the insurer]" and "[t]here is no evidence that leads [the court] to conclude that the subject money is or was in any manner segregated or identifiable," then "the relationship between the [insureds] and [insurer] is akin to that of a debtor and creditor." 628 So. 2d at 333. "[W]here there is 'only a relationship of debtor or creditor, an action for conversion of funds representing the indebtedness will not lie against the indebtor.'" *Id.* (quoting *Lewis v. Fowler*, 479 So. 2d 725, 727 (Ala. 1985)). This is the case, regardless of whether the insureds "are entitled to a refund of their premiums or to other money damages." *Id.*

9

In the instant case, the record establishes that the Fraleys paid premiums to Cincinnati with the expectation that Cincinnati would in turn pay the Fraleys for any damage covered by the insurance policies.  Cincinnati's failure to pay may establish a debt owed to the Fraleys, but ***Willingham*** holds that the incurrence of such a debt under these circumstances does not constitute conversion.  *Id.*; *see also* ***U.S. Fidelity and Guar. Co. v. Bass***, 619 F.2d 1057, 1061 (5th Cir. 1980) (noting that in Alabama "[w]hen there is no obligation to return the identical money , but only a relationship of debtor or creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor").

Therefore, having established the absence of any material factual dispute regarding the Fraleys' claims for unjust enrichment and conversion, the court finds that Cincinnati is entitled to judgment as a matter of law on those claims.

DONE this 7th day of September, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE